UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

CENTRAL DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ERVIN BURNING BREAST, JR., a/k/a Ervin Left Hand Bull,<br><br>Defendant. | 3:26-CR-30021-ECS<br><br>OPINION AND ORDER ADOPTING REPORT AND RECOMMENDATION ON MOTION TO SUPPRESS EVIDENCE |

On August 28, 2026, United States Magistrate Judge Mark A. Moreno issued a Report and Recommendation (R&R), Doc. 34, recommending Defendant Ervin Burning Breast, Jr.'s Motion to Suppress and Memorandum (Motion to Suppress), Doc. 21, be denied, but granted to the extent it seeks to exclude Defendant's unwarned statements as substantive evidence.[1] Burning Breast timely filed his objection to the R&R on September 3, 2026. Doc. 35. For the reasons explained below, this Court overrules Burning Breast's objections, adopts the R&R, and denies, in part, and grants, in part, the Motion to Suppress.

## I. Standard of Review

This Court reviews a report and recommendation pursuant to the statutory standards found in 28 U.S.C. § 636(b)(1), which provides that "the [district] court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations

[1] In his objection to the R&R, Defendant does not object to the unwarned custodial statements he made to Sergeant Matthew Dunham being potentially admissible for impeachment purposes. Doc. 38 at 1–2, 5–6. Because Defendant does not object on this issue, this Court will not address it in this opinion and order adopting R&R.

to which objection is made." 28 U.S.C. § 636(b)(1)(C). The district court judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." Id.; Fed. R. Crim. P. 59(b)(3). This Court has conducted a de novo review of the record and adopts the R&R as modified and supplemented below.

## II. Factual and Procedural Background

Burning Breast is charged with two counts of assault with a dangerous weapon pursuant to 18 U.S.C. §§ 1153 and 113(a)(3).[2] Doc. 1. Because Judge Moreno provided a full factual background of events leading up to Burning Breast's arrest, the R&R's factual findings will not be repeated here. See Doc. 34 at 1–3. Instead, this Court will only give an overview of the relevant details.

After receiving numerous leads and witness accounts of Burning Breast and a white pickup truck being responsible for allegedly breaking windows and assaulting two people with a knife, Rosebud Sioux Tribe Law Enforcement Services Sergeant Matthew Dunham headed to the Burning Breast residence located in the Fairgrounds Housing area. Doc. 1; Doc. 21 at 1–3; Doc. 23 at 2–4; Doc. 34 at 1–3, 7; Doc. 35 at 2. When Sergeant Dunham arrived at the Burning Breast residence, he observed a male resembling Burning Breast on the front porch of the residence. Doc. 21 at 2; Doc. 23 at 4, 8; Doc. 34 at 7–8, 10–11, 13; Doc. 35 at 2. Upon Sergeant Dunham's arrival, Burning Breast retreated inside the residence. Doc. 21 at 2; Doc. 23 at 4; Doc. 34 at 7–8; Doc. 35 at 2. Following a verbal confrontation between the occupants of the residence and Sergeant Dunham, the occupants allowed Sergeant Dunham inside the residence where Burning Breast was arrested. Doc. 21 at 2–3; Doc. 23 at 4–5; Doc. 34 at 2–3; Doc. 35 at 2–3. Sergeant

[2] According to the Indictment, Burning Breast was charged with assault with a dangerous weapon on Shelby Rowland (Count I) and Josh Rowland (Count II). Doc. 1.

Dunham, thereafter, searched the white truck that was parked near the residence, and seized a knife and sheath on the passenger-side floorboard. Doc. 21 at 3; Doc. 23 at 7; Doc. 34 at 3.

On April 23, 2026, Burning Breast moved to suppress "any evidence collected from the Burning Breast residence or a white truck parked nearby without a warrant or valid legal authority[.]" Doc. 21 at 1. Specifically, Burning Breast seeks to suppress "any images or video" from inside the residence, any "subsequent images collected outside the residence," and a "Rapala knife" found inside the truck. Id. at 3–4. The Government timely filed its response to Burning Breast's Motion to Suppress on May 2, 2026. Doc. 23. On July 8, 2026, Judge Moreno held a suppression hearing, where he heard testimony from one Government witness, Sergeant Dunham. Doc. 33 at 2:4–7. This Court also received body camera footage, a transcript of body camera footage, a command log, unit response times, Sergeant Dunham's primary report, witness photographs, and a map of the Fairgrounds Housing area. Docs. 29–32; Doc. 33 at 2:8–20.

On August 28, 2026, after considering the facts and the law, Judge Moreno recommended Burning Breast's Motion to Suppress be granted in part and denied in part. Doc. 34 at 26. On September 3, 2026, Burning Breast objected to the R&R's finding that the "hot pursuit" exception to the warrant requirement applied to Sergeant Dunham's warrantless entry into the Burning Breast residence and that the truck was not entitled to heightened protections under the Fourth Amendment. Doc. 35 at 3–6. Burning Breast did not object to the R&R's finding that his unwarned custodial comments may be admissible for impeachment purposes at trial. Id. at 2.

**III. Discussion**

Burning Breast raises two legal objections to the R&R: (i) the warrantless entry into the Burning Breast residence and (ii) the issue of curtilage. Doc. 35 at 3–6.

**A. The Fourth Amendment**

The Fourth Amendment gives people the right "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. CONST, AMEND. IV. "[T]he ultimate touchstone of the Fourth Amendment is 'reasonableness.'" Lange v. California, 594 U.S. 295, 301 (2021) (quoting Brigham City v. Stuart, 547 U.S. 398, 403 (2006)). A search is reasonable if the officer has a valid search warrant or if the search fits within a specific warrant exception. Riley v. California, 573 U.S. 373, 381–82 (2014) (citations omitted). While it is clear that a physical intrusion or trespass by a government official constitutes a search under the Fourth Amendment, "a violation occurs when government officers violate a person's 'reasonable expectation of privacy.'" United States v. Jones, 565 U.S. 400, 404–07 (2012) (quoting Katz v. United States, 389 U.S. 347, 360 (1967) (Harlan, J., concurring)). However, Fourth Amendment protections only extend to unreasonable searches and seizures. Cnty. of Los Angeles v. Mendez, 581 U.S. 420, 427 (2017) (citation omitted). "[R]easonableness is generally assessed by carefully weighing 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion.'" Id. (quoting Tennessee v. Garner. 471 U.S. 1, 8 (1985)). Generally, the defendant bears the burden to suppress evidence, but the government bears the burden to justify a warrantless search. United States v. Golden, 418 F. Supp. 3d 416, 421 (D. Minn. 2019) (citing Carter v. United States, 729 F.2d 935, 940 (8th Cir. 1984)).

**B. Legal Objection 1: The Warrantless Entry into the Burning Breast Residence**

The R&R concluded Sergeant Dunham's warrantless entry into the Burning Breast residence was justified by the "hot pursuit" exception to the warrant requirement. Doc. 34 at 3. Burning Breast objects to the R&R's conclusion that the "hot pursuit" exception to the warrant

requirement permitted the warrantless entry into the Burning Breast residence. Doc. 35 at 3–4. The warrantless search of a person's residence is "presumptively unreasonable." Brigham City, 547 U.S. at 403 (quoting Groh v. Ramirez, 540 U.S. 551, 559 (2004)). But because "the ultimate touchstone of the Fourth Amendment is reasonableness, the warrant requirement is subject to certain exceptions." Id. (citation modified) (citing Flippo v. West Virginia, 528 U.S. 11, 13 (1999) (per curiam)). "Police officers may enter premises without a warrant when they are in hot pursuit of a fleeing suspect." United States v. Gwin, No. 4:20-CR-586 RLW (RHH), 2023 WL 7346848, at *6 (E.D. Mo. Oct. 18, 2023) (citing United States v. Santana, 427 U.S. 38, 42–43 (1976)). The Supreme Court has identified two factors in determining whether hot pursuit creates an exigency: (1) "the gravity of the underlying offense" and (2) whether the government can demonstrate "an 'immediate or continuous' pursuit of the suspect from the scene of the crime." Zika v. Calvert, 763 F. Supp. 3d 849, 858 (D. Neb. 2025) (citing United States v. Anderson, 688 F.3d 339, 344 (8th Cir. 2012)).

This Court agrees with Judge Moreno that the hot pursuit exception to the warrant requirement applies here. Sergeant Dunham had ample probable cause to conduct a warrantless arrest of Burning Breast inside the residence. See United States v. Fineday, No. 23-CR-0224 (PJS/LIB), 2024 WL 209081, at *2 (D. Minn. Jan. 19, 2024) (adopting R&R where the hot pursuit exception applied because "there was probable cause to search the house" and "the question [was] not close"); see also Doc. 34 at 6–11.

Burning Breast argues the hot pursuit exception does not apply, however, citing Luer v. Clinton, 987 F.3d 1160 (8th Cir. 2021) (per curiam) and Zika. Doc. 35 at 3. In Luer, the Eighth Circuit panel disagreed with the district court that the police officers were in "hot pursuit" of the suspect "given the passage of time" between when the crime occurred and the suspect's eventual

arrest, and the officers had "no information suggesting [the suspect] was armed and dangerous." Luer, 987 F.3d at 1167, 1169. But the factual circumstances in Luer are completely distinguishable from this case. In Luer, the officers did not see anybody outside of the suspect's home at first; rather, the officers saw an open "inner door into [the suspect's] attached garage" and entered the garage through that open door when they received no response after knocking on the home. Id. at 1168. Here, Sergeant Dunham spots Burning Breast sitting on the front porch of the residence and attempts to enter to continue his pursuit after Burning Breast retreats inside the residence. Doc. 34 at 2, 7. Hence, this Court finds the "passage of time" argument—whether that be fifteen minutes, twenty-two minutes, or forty-five minutes from the time the crime occurred to the eventual arrest—unpersuasive. See Doc. 35 at 3–4; see also Doc. 34 at 10.

The factual circumstances in Zika are similarly distinguishable from this case. The court in Zika found no "immediate or continuous" pursuit of the suspect where the police officer "did not attempt to stop or arrest [the suspect], or even approach him, when he got off the tractor. Instead, [the police officer] investigated the crime scene[.]" Zika, 763 F. Supp. 3d at 858. That is not what happens here. Here, Sergeant Dunham almost immediately attempts to enter the Burning Breast residence after he sees Burning Breast retreat inside the residence. Doc. 34 at 2–3. Sergeant Dunham engages in a verbal confrontation with Burning Breast's sister and his girlfriend to let him inside the residence to arrest him. Id. at 3, 10.

This Court agrees with Judge Moreno that the case at bar is more akin to that of the circumstances in Santana. See Doc. 34 at 8–9. In Santana, police officers drove to the defendant's home to arrest her without a warrant for alleged drug trafficking. Santana, 427 U.S. at 39–40. When the officers arrived, the defendant was standing in the doorway of her home, but "retreated into the vestibule of her house." Id. at 40. The officers followed her inside the house

through an open door and arrested her. Id. at 40–41. The Court held that a retreat from a public place to a private one could not thwart an otherwise proper arrest. Id. at 42. The Court further found that a "hot pursuit" exigency existed, reasoning "[t]he fact that the pursuit here ended almost as soon as it began did not render it any the less a 'hot pursuit' sufficient to justify the warrantless entry into [defendant's] house. Once [the defendant] saw the police, there was likewise a realistic expectation that any delay would result in destruction of evidence." Id. at 43.

The circumstances are similar here. Burning Breast immediately retreated into the vestibule of the residence when he saw Sergeant Dunham. Doc. 34 at 2–3. Sergeant Dunham had reason to believe Burning Breast was the culprit he was looking for through numerous witness accounts identifying him as the perpetrator. Doc. 21 at 2; Doc. 23 at 3; Doc. 34 at 2–4. The white pickup truck Sergeant Dunham spotted on the driveway of the residence also matched the truck witnesses had described to him while he was searching for the truck. Doc. 21 at 1–2; Doc. 23 at 1–4; Doc. 34 at 1–2. After Burning Breast retreated into the residence, Sergeant Dunham attempted to enter the residence to arrest him. Doc. 34 at 2–3.

This Court, next, turns to whether Burning Breast had a reasonable expectation of privacy inside the residence. Even though the parties' briefs refer to the home as the "Burning Breast residence," this Court finds Burning Breast had a diminished expectation of privacy inside the home. Doc. 21 at 1–5; Doc. 23 at 4; Doc. 34 at 2, 6; Doc. 35 at 1–4, 6. There are no indications from the record that show Burning Breast owns the residence. The record reflects that Burning Breast's father does not live in the residence, as Sergeant Dunham testified he lives on "BIA 9," a property different from the Burning Breast residence. Doc. 33 at 14:22–24, 20:12–16, 48:7–17. Sergeant Dunham further testified he was "not sure" if Burning Breast, himself, lived in the residence. Id. at 48:25—49:1.

When Sergeant Dunham arrived at the Burning Breast residence, there were three occupants—Burning Breast, his sister, and his girlfriend.[3] Doc. 23 at 4–5, 12; Doc. 34 at 2–3, 19. Burning Breast also does not own the white pickup truck; the truck belongs to Burning Breast's father. Doc. 23 at 4; Doc. 34 at 16. Taken together, all of these factors demonstrate Burning Breast had a diminished expectation of privacy in the home. This Court finds the warrantless entry into the home did not violate Burning Breast's constitutional rights. See United States v. Roberson, No. 25-cr-00372 (MJD/DJF), 2026 WL 2676019, at *2–3 (D. Minn. Sept. 11, 2026) (agreeing with R&R that defendant had no reasonable expectation of privacy in the duplex, where defendant failed to establish the duplex was his residence) (citation omitted).

Accordingly, Burning Breast's objection to the warrantless entry into the Burning Breast residence is overruled.

### C. Legal Objection 2: Standing and Curtilage

The R&R concluded Burning Breast lacked standing to show that the white pickup truck was entitled to heightened Fourth Amendment protections and that the truck was not within the curtilage of the Burning Breast residence. Doc. 34 at 13, 17. Burning Breast objects to the R&R's conclusion that the truck was not within the curtilage of the residence and that the automobile exception applied here. Doc. 35 at 4–5. Burning Breast does not, however, make a specific objection on standing.

This Court finds that the issues of standing and curtilage are invariably intertwined with one another. The Supreme Court in Rakas v. Illinois, 439 U.S. 128 (1978) initially rejected the phrase "standing" in the Fourth Amendment context, holding "the better analysis forthrightly focuses on the extent of a particular defendant's rights under the Fourth Amendment, rather than

---

[3] At the suppression hearing, Sergeant Dunham was only able to identify Burning Breast's sister, Jeanette Burning Breast, as the possible owner of the Burning Breast residence. Doc. 33 at 48:18–22.

on any theoretically separate, but invariably intertwined concept of standing." Rakas, 439 U.S. at 139. However, even decades after Rakas, the Eighth Circuit has equated the legitimate expectation of privacy requirement with standing.[4] See United States v. Anguiano, 795 F.3d 873, 878 (8th Cir. 2015) (holding defendant had no reasonable expectation of privacy in the vehicle where he was merely a passenger with no ownership interest); United States v. Rodriguez-Arreola, 270 F.3d 611, 616-17 (8th Cir. 2001) (concluding that in order for defendant to claim a violation of his Fourth Amendment rights, he must show the "challenged conduct invaded *his* legitimate expectation of privacy rather than that of a third party") (emphasis in original) (quoting United States v. Payner, 447 U.S. 727, 731 (1980))).

### 1. Standing

To establish standing to challenge a search, a defendant must demonstrate a reasonable expectation of privacy in the place to be searched. United States v. Butler, 168 F.4th 1107, 1110 (8th Cir. 2026). The defendant has the burden of proving a reasonable expectation of privacy in the area searched. Id. (citing United States v. Barragan, 379 F.3d 524, 529 (8th Cir. 2004)). "If a defendant fails to prove a sufficiently close connection to the relevant places or objects searched he has no standing to claim that they were searched or seized illegally." United States v. Russell, 847 F.3d 616, 618 (8th Cir. 2017) (quoting Barragan, 379 F.3d at 529). Courts determine whether a defendant has proven a sufficiently close connection based on the totality of the circumstances surrounding the search. Id. (citing United States v. Gomez, 16 F.3d 254, 256 (8th Cir. 1994)). Among the factors considered are the defendant's "ownership, possession

[4] Courts have emphasized the difference between Fourth Amendment standing and Article III standing. See Byrd v. United States, 584 U.S. 395, 410–11 (2018) ("The concept of standing in Fourth Amendment cases can be a useful shorthand for capturing the idea that a person must have a cognizable Fourth Amendment interest in the place searched before seeking relief for an unconstitutional search; but it should not be confused with Article III standing, which is jurisdictional and must be assessed before reaching the merits." (citing Ariz. Christian Sch. Tuition Org. v. Winn, 563 U.S. 125, 129 (2011))); see also United States v. Juneau, 73 F.4th 607, 613 (8th Cir. 2023) (explaining the difference between Article III standing and Fourth Amendment standing) (quoting Byrd, 584 U.S. at 411).

and/or control of the area searched or item seized; historical use of the property or item; ability to regulate access; . . . the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of the expectation of privacy considering the specific facts of the case." Id. (quoting Gomez, 16 F.3d at 256).

Here, this Court affirms the R&R's finding that Burning Breast lacks standing to challenge the warrantless search of the white pickup truck. Doc. 34 at 13–17. On the first factor, Burning Breast has no ownership interest in the truck because he does not own the truck, and his sister is reported to have driven the truck during the alleged crime. Doc. 23 at 4; Doc. 34 at 16. Hence, this Court agrees with Judge Moreno that Burning Breast was a mere passenger of the truck. See Doc. 34 at 14–17; see also Russell, 847 F.3d at 618 ("Generally, a mere passenger does not have standing to challenge a vehicle search where he has 'neither a property nor a possessory interest in the automobile.'") (quoting Anguiano, 795 F.3d at 878).

With respect to the second factor, because Burning Breast was not driving the truck and the truck does not belong to him, his historical use of the vehicle is unclear. See United States v. Feye, 568 F. Supp. 3d 962, 974 (N.D. Iowa 2021) (agreeing with the magistrate judge that defendant's historical use of the vehicle was "extremely limited" where defendant likely used the vehicle for "no more than several hours").

On the third and fourth factors, this Court recognizes Burning Breast may have had a subjective expectation of privacy because the truck was parked on the driveway of the residence. Doc. 34 at 12; see also DePugh v. Penning, 888 F. Supp. 959, 975 (N.D. Iowa 1995) (noting plaintiff may have exhibited a subjective expectation of privacy where he did not dispose of his property in a public area). However, this point does not overcome the fact that Burning Breast had no possessory interest in the truck to begin with and it is unclear from the record whether

Burning Breast or his sister even had permission to use it. See United States v. Quiroz, 57 F. Supp. 2d 805, 820 (D. Minn. 1999) (holding defendant failed to establish a legitimate expectation of privacy in the vehicle where the vehicle was not registered to defendant). As a result, the totality of the circumstances does not support that Burning Breast had a subjective expectation of privacy in the knife that was seized from the truck and that the expectation was objectively reasonable. See Feye, 568 F. Supp. 3d at 974 (concluding the fact that defendant did not receive permission to use the vehicle did not support an objective expectation of privacy).

Generally, courts have "declined to extend the benefits of the exclusionary rule to defendants whose *personal* Fourth Amendment rights have not been infringed upon[.]" United States v. Symonevich, 688 F.3d 12, 20 (1st Cir. 2012) (emphasis added) (citing Minnesota v. Carter, 525 U.S. 83, 88 (1998)). Fourth Amendment rights are personal rights that may not be vicariously asserted. United States v. Long, 30 F. Supp. 3d 835, 861 (D.S.D. 2014) (citing United States v. Douglas, 744 F.3d 1065, 1071 (8th Cir. 2014)). To challenge the search of the white pickup truck, Burning Breast needed to show he had an ownership interest in the truck or that the truck was his personal property. Because Burning Breast failed to do this, his rights were clearly not violated by the search.

**2. Curtilage**

The R&R concluded that the white pickup truck was not part of the curtilage of the Burning Breast residence. Doc. 34 at 13. Burning Breast objects to this conclusion. Doc. 35 at 4–5. This Court has established that standing is invariably intertwined with curtilage. Notably, Burning Breast does not respond at all to the R&R's findings on standing. Because this Court has determined that Burning Breast has no standing with respect to the search of the truck, Burning Breast had no reasonable expectation of privacy in the warrantless seizure of the knife

from the truck, even though it was parked along the driveway of the residence. Doc. 34 at 12. This is true whether the truck was parked within the curtilage or not. Regardless, this Court will address the curtilage issue to be thorough.

Curtilage is "the area immediately surrounding and associated with the home." United States v. McGhee, 129 F.4th 1095, 1101 (8th Cir. 2025) (citation modified). "In assessing whether a particular area is curtilage, [courts] determine whether the area in question is so intimately tied to the home itself that [courts] should extend the Fourth Amendment's protection to it." United States v. Houston, 920 F.3d 1168, 1173 (8th Cir. 2019) (quoting United States v. Mathias, 721 F.3d 952, 956 (8th Cir. 2013)). The central inquiry is whether the area "harbors the intimate activity associated with the sanctity of a man's home and the privacies of life." Mathias, 721 F.3d at 956 (quoting United States v. Dunn, 480 U.S. 294, 300 (1987)).

Four factors, known as the Dunn factors, determine whether an area is curtilage: "(1) the proximity of the area claimed to be curtilage to the home, (2) whether the area is included within an enclosure surrounding the home, (3) the nature of the uses to which the area is put, and (4) the steps taken by the resident to protect the area from observation by people passing by."[5] McGhee, 129 F.4th at 1101 (citation modified).

Burning Breast contends he has the right to challenge the warrantless search of the white pickup truck because the truck was part of the curtilage of the residence. Doc. 35 at 4–6. Burning Breast claims the truck was not parked on the street nor was it parked in a public area. Id. at 4. Rather, the truck was parked "fairly close to the house, about 12 feet from the house, and about 18 feet from the ramp the [sic] leads to the front door." Id. Burning Breast contends this situation is akin to the circumstances in Collins v. Virginia, 584 U.S. 586 (2018).

---

[5] The Dunn factors are "not mechanically applied and are considered together." United States v. Hopkins, 824 F.3d 726, 730 (8th Cir. 2016) (citing United States v. Bausby, 720 F.3d 652, 656–57 (8th Cir. 2013)).

In Collins, police officers had reason to believe that a motorcycle that had been speeding on a highway was parked in the driveway of the petitioner's home. Id. at 589. Upon seeing the motorcycle at the home, one of the officers, without a warrant, walked "up to the top of the driveway" and pulled a tarp that was placed over the motorcycle. Id. The officer determined the motorcycle had been stolen by looking up its vehicle identification number. Id. at 589–90. In an opinion authored by Justice Sonia Sotomayor, the Court held that the top portion of the driveway, which was adjacent to the house and was enclosed by a brick wall and the side of the house, was curtilage. Id. at 593–94. As a result, the Court suppressed the evidence obtained from the officer's search. Id. at 601.

This Court finds Collins distinguishable from the case at bar. Unlike here, the police officers in Collins lacked probable cause to remove the tarp from the motorcycle.[6] In Collins, the police officer drove to the petitioner's home after tracking down the address and parked along the street near the home. Id. at 589. When the officer spotted what appeared to be a motorcycle covered with a white tarp, he walked toward the home and removed the tarp "to investigate further." Id. Under the tarp was a motorcycle that matched the one "from the speeding incident" and determined that the motorcycle had been stolen. Id. The officer, then, took a picture of the motorcycle, put the tarp back on it, and returned to his car "to wait for [the petitioner]." Id. at 590. The petitioner was not home at the time.[7] Id.

But the facts in this case are fundamentally different. Here, Sergeant Dunham received at least two separate calls for service. Doc. 23 at 1–3; Doc. 34 at 1–2. The first call informed

---

[6] The Supreme Court reversed the rulings of the Court of Appeals of Virginia and the Supreme Court of Virginia that the police officer had probable cause to believe that the motorcycle under the tarp was "the same motorcycle that had evaded him in the past" and that "the motorcycle was contraband," respectively. Collins, 584 U.S. at 590–91.

[7] The home belonged to the petitioner's girlfriend. Collins, 584 U.S. at 589. The petitioner stayed there "a few nights per week." Id.

Sergeant Dunham that a white pickup truck had "hit the side of one apartment and that a male got out [of the truck], forcing his way into an adjacent apartment by breaking windows and the front door." Doc. 34 at 2; see also Doc. 23 at 1–2. The second call informed Sergeant Dunham that people in the truck broke windows and Burning Breast attempted to assault Shelby Rowland and Josh Rowland with a knife. Doc. 1; Doc. 21 at 1–2; Doc. 23 at 2–3; Doc. 34 at 1–2. While looking for the truck, Sergeant Dunham received multiple leads from witnesses that the perpetrator was Burning Breast, the truck belonged to Burning Breast's father, and that the truck was currently at the "Burning Breast residence." Doc. 23 at 2–4; Doc. 34 at 2. Once at the residence, Sergeant Dunham spotted Burning Breast sitting on the front porch, after which Burning Breast retreated inside the residence. Doc. 21 at 2; Doc. 23 at 4; Doc. 34 at 2; Doc. 35 at 2. At this time, Sergeant Dunham noticed the truck parked on the driveway of the residence. Doc. 21 at 2; Doc. 23 at 10; Doc. 34 at 8. Burning Breast was arrested inside the residence. Doc. 23 at 6; Doc. 34 at 3. These facts are significantly different from Collins.

Moreover, in Collins, the petitioner's driveway was partially "enclosed on two sides by a brick wall about the height of a car and on a third side by the house." Collins, 584 U.S. at 593. But here, Burning Breast's driveway is described as a "dirt area" that was not in an enclosed space. Doc. 23 at 10; Doc. 34 at 12. Additionally, while the motorcycle in Collins was completely parked and covered in a tarp, the truck at the Burning Breast residence had the keys in the ignition "audibly dinging" with the passenger-side door open. Doc. 34 at 16. These are key distinguishing factors between Collins and this case.

This Court affirms Judge Moreno's findings on curtilage. An objective application of the Dunn factors demonstrates the white truck was not in the curtilage of the home.

### 3. Automobile Exception

Burning Breast objects to the R&R's conclusion that Sergeant Dunham had probable cause to search the truck under the automobile exception. Doc. 35 at 1, 5–6.

"Searches conducted without a warrant are per se unreasonable, subject to a few well-established exceptions." United States v. Britton, 101 F.4th 538, 541 (8th Cir. 2024) (quoting United States v. Williams, 616 F.3d 760, 764 (8th Cir. 2010)). One well-established exception to the warrant requirement is the automobile exception, which "authorizes officers to search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." Id. (quoting United States v. Davis, 569 F.3d 813, 816 (8th Cir. 2009)).

"Probable cause exists, when, given the totality of the circumstances, a reasonable person could believe there is a fair probability that contraband or evidence of a crime would be found in a particular place." United States v. Keck, 2 F.4th 1085, 1089 (8th Cir. 2021) (quoting United States v. Murillo-Salgado, 854 F.3d 407, 418 (8th Cir. 2017)). Probable cause requires "only a probability or substantial chance of criminal activity, not an actual showing of such activity." United States v. Payne, 119 F.3d 637, 642 (8th Cir. 1997) (quoting Illinois v. Gates, 462 U.S. 213, 243–44 n.13 (1983)).

Here, Sergeant Dunham had ample probable cause to conduct a warrantless search of the white pickup truck. Sergeant Dunham first received a call for service that a white pickup truck had hit a pole in front of an apartment and broke windows. Doc. 23 at 1–2; Doc. 34 at 1–2. A witness identified the truck as belonging to Burning Breast's father and gave Sergeant Dunham the direction of the truck. Doc. 23 at 2; Doc. 34 at 2. While looking for the truck, Sergeant Dunham received another call for service informing him

that the same truck was at the Hope Reynolds residence and the people in that truck were breaking windows and attempting to assault Shelby Rowland and Josh Rowland with a knife. Doc. 1; Doc. 21 at 1–2; Doc. 23 at 2–3; Doc. 34 at 2. Witnesses there identified the perpetrator as Burning Breast. Doc. 23 at 3; Doc. 34 at 2. Along the way, Sergeant Dunham learned from a witness that the white truck was at the Burning Breast residence. Doc. 23 at 4; Doc. 34 at 2. When Sergeant Dunham found Burning Breast sitting on the front porch of the residence, Burning Breast retreated inside the residence. Doc. 21 at 2; Doc. 23 at 4; Doc. 34 at 2; Doc. 35 at 2. During this time, Sergeant Dunham spotted the truck with keys still in the ignition parked on the driveway of the residence. Doc. 21 at 2; Doc. 23 at 4; Doc. 34 at 8. Thus, ample probable cause existed to search the truck.

The state of the truck also gave Sergeant Dunham probable cause to search it. The automobile exception to the warrant requirement "exists because a vehicle's ready mobility creates an exigency and because individuals have a reduced expectation of privacy in an automobile, owing to its pervasive regulation." United States v. Vittetoe, 86 F.4th 1200, 1202–03 (8th Cir. 2023) (citation modified). Here, the truck was parked "with the passenger door open and the keys in the ignition, audibly dinging." Doc. 34 at 16. Because the keys were still in the ignition and Burning Breast was outside on the front porch, these circumstances created an exigency that further justified Sergeant Dunham's warrantless search of the truck.

Because this Court finds that the totality of the circumstances supports the finding there was ample probable cause for the automobile exception to apply, Burning Breast's objection is overruled.

## IV. Conclusion

For the reasons explained above, it is

ORDERED that Defendant Ervin Burning Breast, Jr.'s objections to the Report and Recommendation, Doc. 35, are overruled, and the Report and Recommendation on Defendant's Motion to Suppress, Doc. 34, is adopted. It is further

ORDERED that Defendant Ervin Burning Breast, Jr.'s Motion to Suppress, Doc. 21, is denied, in part, and granted, in part to the extent described in the above opinion.

DATED this 16th day of October, 2026.

BY THE COURT:

ERIC C. SCHULTE
UNITED STATES DISTRICT JUDGE